[Cite as *State v. Westerfield*, 2018-Ohio-2139.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,          CASE NO.  3-17-15

     v.

JASON L. WESTERFIELD,          O P I N I O N

     DEFENDANT-APPELLANT.

STATE OF OHIO,

     PLAINTIFF-APPELLEE,          CASE NO.  3-17-16

     v.

JASON L. WESTERFIELD,          O P I N I O N

     DEFENDANT-APPELLANT.

Appeals from Crawford County Common Pleas Court
Trial Court Nos. 17-CR-0158 and 17-CR-0235

Appeal Dismissed in 3-17-15 and Judgment Affirmed in 3-17-16

Date of Decision:  June 4, 2018

APPEARANCES:

     *James W. Fruth* for Appellant

     *Rhonda L. Bester* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Jason Westerfield ("Westerfield"), brings this appeal from the October 23, 2017, judgment of the Crawford County Common Pleas Court sentencing him to 7 years in prison after he was convicted in a jury trial of Burglary, a felony of the second degree. On appeal, Westerfield argues that the trial court erred by denying his motion to dismiss on speedy trial grounds and that he received ineffective assistance of counsel.

*Relevant Facts and Procedural History*

{¶2} On June 24, 2017, Crystal Caudill ("Caudill") picked up Christopher Alex Brooks ("Brooks") and the two purchased beer and Crown Royal together to drink that evening at Caudill's residence. Brooks and Caudill had a sexual relationship in the past and Brooks occasionally did some work on Caudill's house, though Caudill indicated the sexual relationship had essentially ended by June 24. Brooks and Caudill began drinking at Caudill's residence in the late afternoon/early evening hours and continued drinking later into the night.

{¶3} During the night, Westerfield began contacting Caudill. Westerfield and Caudill had a sexual relationship, though they did not see each other that often and they both were seeing other people. Caudill indicated to Westerfield that she had "company," which irritated Westerfield.

{¶4} Westerfield sent Caudill a number of messages stating that he was coming to Caudill's residence and that he was going to hurt whoever was there with her. When Westerfield arrived at Caudill's residence, Caudill went outside to meet him and told him not to go inside. Westerfield entered the residence regardless, though Caudill tried to stop him, and he confronted Brooks, who had never met Westerfield.

{¶5} According to Brooks, Westerfield struck him multiple times and pulled a knife on him, but Caudill stepped between them and was able to get Westerfield to give her the knife. Brooks indicated that he was then going to leave, but it was a long walk so he grabbed his bottle of Crown Royal to take with him. He claimed that Westerfield took the bottle from him and said that the bottle was going to stay but Brooks had to leave. Brooks claimed that Westerfield then struck him two additional times and eventually kicked or stomped on his leg, breaking it. Afterward, Westerfield left Caudill's residence. Brooks insinuated that Westerfield left with his bottle of Crown Royal.

{¶6} Approximately an hour after the incident, police were called. Brooks initially told police that he fell and that was how he broke his leg, then he later changed his story saying that he was "jumped" by three people. Brooks went on to eventually state later that Westerfield alone had come into Caudill's residence, hit him multiple times and broke his leg before leaving. Brooks stated that he initially

-3-

said he fell because Caudill was afraid of Westerfield and because Brooks was on probation and drinking was a violation.

{¶7} Caudill also told the police multiple stories regarding what happened, indicating first that a man named "Doug Rowland" had been the one to hurt Westerfield. Later, after inquiring as to whether the police could protect her, Caudill indicated that Westerfield had been the one to come to her house. However, at trial, Caudill testified that while she did not give Westerfield permission to go into her house, she did not witness any of the purported violence because she was in the process of containing her dogs. Caudill did acknowledge that after Westerfield was incarcerated and awaiting trial, Caudill had spoken to him on the phone over 180 times, totaling in excess of 14 hours of conversation.

{¶8} Westerfield was initially indicted on July 11, 2017, for Felonious Assault in violation of R.C. 2903.11(A)(1), a felony of the second degree, and Aggravated Robbery in violation of R.C. 2911.01(A)(3), a felony of the first degree.[1] The case was scheduled to proceed to a jury trial on September 7, 2017; however, on September 6, 2017, the day before trial, the defense filed a motion *in limine* seeking to prevent the State from presenting evidence related to the jail house calls that had been made from Westerfield to Caudill. The defense indicated that it needed additional time to review the recordings.

---

[1] This indictment corresponds to trial court case 17-CR-0158, which was assigned to appellate number 3-17-15.

**{¶9}** At that time, on September 6, 2017, Westerfield filed a written speedy trial waiver and the parties made an agreed motion to continue the trial to October 19, 2017.

**{¶10}** On September 12, 2017, a second indictment was filed asserting another charge arising out of the June 24, 2017 incident. It alleged one count of Aggravated Burglary in violation of R.C. 2911.11(A)(1) and (A)(2), a felony of the first degree.[2] The two indictments against Westerfield were subsequently consolidated for trial.

**{¶11}** On September 14, 2017, Westerfield filed a "revocation" of his speedy trial waiver, indicating that he wanted to proceed to trial immediately.

**{¶12}** The case proceeded to trial on October 19, 2017. At that time, Westerfield's attorney made a motion to dismiss on speedy trial grounds, arguing that he believed that with Westerfield's "revocation," the speedy trial time had passed. The trial court denied that motion, reasoning that the parties had agreed to a continuance of the prior trial date to October 19, 2017. The trial court stated that Westerfield could not file a motion to continue and waive speedy trial just before his speedy trial rights would expire, get a new trial date, and as soon as he thought his speedy trial time expired go back and revoke it. The trial court thus denied the motion.

---

[2] This indictment corresponds to trial court case 17-CR-0235, which was assigned to appellate number 3-17-16.

-5-

{¶13} The trial then commenced with the State presenting the testimony of Brown and Caudill. At the conclusion of their testimony, the State rested. Although the defense cross-examined the witnesses presented, the defense did not call any witnesses. The matter was submitted to the jury, with the State requesting a lesser-included offense instruction for Burglary on the Aggravated Burglary charge.

{¶14} The jury returned not guilty verdicts for Aggravated Robbery and Felonious Assault, and found Westerfield guilty of the lesser included offense of Burglary. Westerfield was sentenced to serve 7 years in prison on the Burglary conviction. A judgment entry memorializing his sentence was filed October 23, 2017. It is from this judgment that Westerfield appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**The trial court erred in overruling Appellant's motion to dismiss for violation of his speedy trial rights.**

**Assignment of Error No. 2**
**The Appellant was denied his constitutional right to effective assistance of counsel when the appellant's trial counsel failed to protect Appellant's rights at trial.**

{¶15} Before we address the assignments of error, we must first address the fact that Westerfield was acquitted of both charges in trial court case 17-CR-0158, which corresponds to appellate case number 3-17-15. As he was acquitted of both of those charges in that case, there is nothing remaining to appeal from trial court case 17-CR-0158, therefore appeal 3-17-15 is dismissed and we will proceed to

discuss the assignments of error as they pertain to trial court case 17-CR-0235, and the corresponding appellate case 3-17-16.

*First Assignment of Error*

**{¶16}** In Westerfield's first assignment of error, he argues that the trial court erred in overruling his motion to dismiss on speedy trial grounds. Specifically, Westerfield contends that he was incarcerated for 117 days prior to commencement of his trial, which was 27 more than allowable under R.C. 2945.71 when using the triple-count provision.[3]

Standard of Review

**{¶17}** Appellate review of a trial court's decision on a motion to dismiss for a speedy-trial violation involves a mixed question of law and fact. *State v. James,* 4th Dist. Ross No. 13CA3393, 2014–Ohio–1702, ¶ 23. We will defer to a trial court's factual findings if some competent and credible evidence supports them, but we review de novo the trial court's application of the law to those facts. *State v. Carr,* 4th Dist. Ross No. 12CA3358, 2013–Ohio–5312, ¶ 12. Also, "[t]he interpretation of a statute * * * is a question of law, which we review de novo." *State v. Frey,* 4th Dist. Ross No. 05CA2853, 2006–Ohio–2452, ¶ 9.

---

[3] Westerfield argues that his trial began on his 118th day of incarceration, but also cites the number of 119 days in his brief. He seems to conclude in his argument that he calculates his speedy trial time as 117 days of incarceration, which count as 3 days each for purposes of R.C. 2945.71, totaling 351 days, or 81 days over the limit. However, in his reply brief he relies on the 119 number as the definitive number.

Analysis

**{¶18}** Revised Code 2945.71(C)(2) provides that a person against whom a felony charge is pending shall be brought to trial within 270 days after arrest. If an accused is in jail in lieu of bail solely on the pending charge, each day counts as three days for purposes of the speedy-trial calculation. R.C. 2945.71(E). Westerfield argues that he was not brought to trial until between 117 and 119 days after his arrest.

**{¶19}** Notably, Westerfield's speedy trial claim was directly addressed by the trial court prior to the commencement of his trial.

> **THE COURT: * * * [W]hat happened in this case is speedy trial was set for September 21st. The Defendant, in open court, with you and everyone in here, said that they needed a continuance because of new evidence involving jail conversations.**
>
> **[DEFENSE COUNSEL]: Yes, Your Honor.**
>
> **THE COURT: The parties agree[d] to a continuance to 10/19. All right. That is when speedy trial would expire, would be the date of the trial. We have a chance, we have to take you to trial there. You don't get to file a motion to continue and waive speedy trial, get a new trial date, and then as soon as you think the time has expired, go back and revoke it. That's no[t] how it works. So in that regard, it's denied.**
>
> **\* \* \***
>
> **THE COURT: In addition, * * * this wasn't a general waiver. It was a continuance, which tolls the speedy trial time all the way to the 19th * * * so I'm going to deny the motion.**

(Tr. at 5-7).

{¶20} After reviewing the record, we agree with the trial court. Westerfield had a trial date within the original speedy trial timeframe. *He* requested that the original trial date be continued so that his attorney could examine the numerous jailhouse phone calls made between Westerfield and Caudill. Westerfield also then waived his speedy trial time and requested that the trial be continued to a specific trial date in October, which was the date the trial was actually held.

{¶21} While it is true that Westerfield filed a motion to "revoke" his speedy trial waiver, he was still reasonably brought to trial in an expedient manner. As the trial court noted, if we were to rule in Westerfield's favor in this case, defendants would be able to easily manipulate and subvert speedy trial statutes by filing waivers, agreeing to continuances, then revoking the waiver when it would be most inconvenient for the court and impractical to get a sudden, immediate trial date.

{¶22} Notwithstanding this point, we also would note, as the State points out, that Westerfield's purported speedy trial calculation does not include *any* applicable tolling periods under R.C. 2945.72 such as his discovery demand, his motion in limine, and any time that would be attributed to his motion to continue before the ultimate revocation. Factoring in all these days, there is no clear indication that Westerfield's speedy trial rights were violated.

{¶23} Westerfield argues that in denying his motion to dismiss the trial court erroneously relied on the Supreme Court of Ohio's decision in *State v. Blackburn*,

118 Ohio St.3d 163, 2008-Ohio-1823. In *Blackburn*, the court held that, "In calculating the time within which a criminal defendant must be brought to trial under R.C. 2945.71, periods of delay resulting from motions filed by the defendant in a previous case also apply in a subsequent case in which there are different charges based on the same underlying facts and circumstances of the previous case." Westerfield contends that the trial court actually should have applied *State v. Adams*, 43 Ohio St.3d 67 (1989), wherein the Supreme Court of Ohio held, "When an accused waives the right to a speedy trial as to an initial charge, this waiver is not applicable to additional charges arising from the same set of circumstances that are brought subsequent to the execution of the waiver." Even if we disregarded *Blackburn*, we could not find that *Adams* compelled a different result where Westerfield agreed to a continuance for his own benefit so that his counsel could analyze evidence and be prepared for trial, then tried to later revoke a speedy trial waiver. Taking all these issues into consideration, Westerfield's first assignment of error is not well-taken, and it is overruled.

*Second Assignment of Error*

{¶24} In Westerfield's second assignment of error, he argues that he received ineffective assistance of counsel. Specifically, he contends that trial counsel was deficient for failing to deliver on promises that he made during opening statement. Westerfield focuses strongly on trial counsel's failure to question Caudill more

heavily about the whereabouts of the Crown Royal bottle that Westerfield purportedly took from Caudill's residence.

Standard of Review

{¶25} "To establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced him." *State v. Hernandez*, 3d Dist. Defiance Nos. 4–16–27, 28, 2017–Ohio–2797, ¶ 12, citing *State v. Phillips*, 3d Dist. Allen No. 1–15–43, 2016–Ohio–3105, ¶ 11, citing *State v. Jackson,* 107 Ohio St.3d 53, 2005–Ohio–5981, ¶ 133, citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The failure to make either showing defeats a claim of ineffective assistance of counsel. *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697. ("[T]here is no reason for a court deciding an ineffective assistance of counsel claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

{¶26} We note that a tactical decision by trial counsel, who as a licensed attorney is presumed to be competent, is not by itself enough to show ineffective assistance of counsel simply because the strategy did not result in an acquittal. *State v. Clatyon*, 62 Ohio St.2d 45, 48-49 (1980); *State v. Timm*, 3d Dist. Seneca No. 13-11-23, 2012-Ohio-410, ¶ 31.

Analysis

**{¶27}** In this case, Westerfield contends that his trial counsel was ineffective primarily for failing to ask Caudill about bringing the bottle of Crown Royal to defense counsel's office that Westerfield had allegedly stolen well after the incident in question, establishing that Westerfield had not taken the bottle. Westerfield argues that if his trial counsel would have pressed this point, as he indicated he would in his opening statement, Westerfield would not have been convicted of Burglary.

**{¶28}** Contrary to Westerfield's arguments, the jury was informed that to convict Westerfield of Burglary the jury had to find that Westerfield by force, stealth, or deception trespassed in Caudill's home (an occupied structure) when another person was present *with the purpose to commit a criminal offense*. Westerfield seems to be under the impression that to be convicted of Burglary he had to have the purpose to commit a *theft* offense, such as taking the Crown Royal bottle. However, trespassing in the occupied structure while Brooks was present results in a Burglary where Westerfield had the intent to commit *any* criminal offense.

**{¶29}** When Westerfield was on his way to Caudill's residence, he indicated through his messages threats of violence to Brooks. Specifically, he stated, "He can stay there [C]rystal.., all I kno [sic] is I'm showing up and where it goes from there..,

I've already accepted what it may be * * * From getting beat up to going to jail for making a [sic] example outta who the fuck ever is there.., I'm coming…" (State's Ex. 6). Combining this with Brooks's testimony regarding the events in question, the jury could readily convict Westerfield of having the intent to commit an assault on Brooks at the residence.

{¶30} Moreover, both defense counsel and the State indicated in their opening arguments that they did not know what Caudill was going to say on the witness stand because she had changed her story multiple times and she had been in significant contact with Westerfield over the phone. Thus we can find no ineffective assistance of counsel here and even if we did there is no resulting prejudice. For these reasons Westerfield's second assignment of error is overruled.

*Conclusion*

{¶31} For the foregoing reasons Westerfield's appeal in case 3-17-15 is dismissed and his arguments related to his appeal in case 3-17-16 are overruled. The judgment of the Crawford County Common Pleas Court is affirmed.

*Appeal 3-17-15 Dismissed*

*Appeal 3-17-16 Affirmed*

**ZIMMERMAN and PRESTON, J.J., concur.**

**/jlr**