[Cite as *State v. Long*, 2018-Ohio-5163.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2017-CA-84 |
| v. | : | Trial Court Case No. 2015-CR-125 |
| JOHN W. LONG | : | (Criminal Appeal from Common Pleas Court) |
| Defendant-Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of December, 2018.

. . . . . . . . . . .

ANDREW P. PICKERING, Atty. Reg. No. 0068770, Clark County Prosecutor's Office, Appellate Division, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
Attorney for Plaintiff-Appellee

S. TODD BRECOUNT, Atty. Reg. No. 0065276, 115 North Main Street, Suite A, Urbana, Ohio 43078
Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

**{¶ 1}** Defendant-appellant, John W. Long, appeals from his convictions for one count of having a weapon while under disability, a third-degree felony pursuant to R.C. 2923.13(A)-(B), and one count of failure to comply with an order or a signal of a police officer, a third-degree felony pursuant to R.C. 2921.331(B) and (C)(5)(a). Raising a single assignment of error, Long contends that his convictions should be reversed because the State violated his constitutional right to a speedy trial. We find that Long's right to a speedy trial was not violated, and therefore, we affirm his convictions.

## I. Facts and Procedural History

**{¶ 2}** On February 28, 2015, Long approached—on foot—two or three vehicles queued in a service station's drive-through lane. Long demanded money from the vehicles' occupants, threatening them with a handgun. After striking two persons with his gun and taking five dollars, Long fled in his own vehicle. Police officers responded to the service station as Long climbed into his vehicle, and when he drove off, a high-speed chase ensued. During the chase, Long crashed his vehicle but ran from the scene. Police officers then apprehended him and placed him under arrest.

**{¶ 3}** A Clark County grand jury issued an indictment against Long on March 9, 2015, charging him with five counts of aggravated robbery with a deadly weapon, in violation of R.C. 2911.01(A)(1); one count of having a weapon while under disability, in violation of R.C. 2923.13(A); one count of kidnapping, in violation of R.C. 2905.01(A)(2); one count of failure to comply with an order or a signal of a police officer, in violation of R.C. 2921.331(B); one count of improperly handling a firearm in a motor vehicle, in violation of R.C. 2923.16(B); and one count of tampering with evidence, in violation of

R.C. 2921.12(A)(1). Each count of aggravated robbery included a firearm specification.

**{¶ 4}** On May 20, 2015, Long pleaded guilty to two counts of aggravated robbery, as well as to the charge of failure to comply with an order or a signal of a police officer, and the remaining charges and specifications were dismissed. Long appeared for sentencing on June 9, 2015, and the trial court sentenced him to serve nine years in prison for each of the two counts of aggravated robbery, to be served concurrently, and to two years on the charge of failure to comply, with the latter to be served consecutively. The aggregate sentence was 11 years.

**{¶ 5}** Long appealed, and effective March 7, 2016, we reversed his convictions and remanded the case to the trial court for further proceedings because, during his plea hearing, the court had not fully advised him of his constitutional rights. *State v. Long*, 2d Dist. Clark No. 2015-CA-64, 2016-Ohio-837, ¶ 1-2. Three months later, on June 6, 2016, the trial court ordered that Long be transferred to the Clark County Jail for a review hearing on June 22, 2016. At the review hearing, the trial court noted that discovery was complete and summarized the arrangements that the parties had made during a pretrial conference held before Long's appeal; the State indicated its willingness to enter into the same plea agreement that Long had previously accepted. Long's counsel told the court that he had not yet had a chance to confer with his client, meaning that he could not respond to the plea offer on the spot, and he asked the court to set the matter for trial. The court did not schedule a trial at that time.

**{¶ 6}** On September 1, 2016, the parties appeared for a status conference. They confirmed again that they had completed discovery and that the arrangements made during the earlier pretrial conference were satisfactory; the State also indicated that it

remained willing to enter into the same plea agreement. The court set a trial date of September 28, 2016.

**{¶ 7}** On September 21, 2016, Long filed a motion to dismiss the indictment, noting that he had been awaiting trial for 198 days (or approximately six and one-half months) since March 7, 2016, when this court remanded his case to the trial court, and arguing that the delay violated his constitutional right to a speedy trial. The trial court held a pretrial conference the following day and continued the trial date to allow the State time in which to respond to Long's motion. On September 28, 2016, having continued the trial, the court held a hearing on the motion to dismiss, and on October 26, 2016, the court issued a decision overruling the motion.

**{¶ 8}** From October 27, 2016, through August 6, 2017, the docket is devoid of any activity, and the trial court did not reschedule Long's trial.[1] On August 7, 2017, Long filed his second motion to dismiss the indictment on speedy trial grounds, noting that he had, by that point, been awaiting trial for 518 days (or approximately 17 months) since his case was remanded, and for 285 days (or approximately nine and one-half months) since the trial court overruled his first motion to dismiss. The trial court overruled Long's second motion on August 16, 2017.

**{¶ 9}** On August 21, 2017, the trial court docketed an entry indicating, in the

[1] The online case information system used by the Clark County Court of Common Pleas indicates that a pretrial conference was scheduled for August 7, 2017. Yet, no corresponding scheduling entry appears on the docket, which further does not establish whether the conference actually occurred. Similarly, the court's online case information system indicates that a trial was scheduled for September 26, 2017, but given that no corresponding scheduling entry appears on the docket, the record does not allow us to determine when, or even if, the court scheduled a trial on this date.

absence of a corresponding scheduling entry, that a trial had been set to begin on August 16, 2017, but was being continued because of a scheduling conflict with another jury trial. Long then requested, in a motion filed on August 22, 2017, that the trial court reconsider its decision on his second motion to dismiss. The trial court overruled the motion for reconsideration on September 7, 2017.

**{¶ 10}** Long appeared before the trial court on September 21, 2017, and pleaded no contest to the charges of having a weapon while under disability and failure to comply with an order or a signal of a police officer. The trial court sentenced Long to a term of two years on the charge of having a weapon while under disability, and to a consecutive term of three years on the charge of failure to comply, for an aggregate term of imprisonment of five years. Long timely filed a notice of appeal on September 26, 2017.

**II. Analysis**

**{¶ 11}** In his single assignment of error, Long contends that:

> THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT/DEFENDANT'S [SIC] MULTIPLE MOTIONS TO DISMISS BASED ON THE REASON THAT APPELLANT/DEFENDANT [SIC] HAD BEEN DENIED HIS RIGHT TO A SPEEDY TRIAL PURSUANT TO THE SIXTH AMENDMENT OF [SIC] THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

**{¶ 12}** Long argues that the delay of 518 days, or approximately 17 months, from the date on which we remanded his case, March 7, 2016, until the date on which he filed his second motion to dismiss, August 7, 2017, was unreasonable; that neither the trial court nor the State has justified the delay; that he repeatedly asserted his right to a speedy

trial; and that the delay has caused him prejudice. *See* Appellant's Br. 12-13. He posits that we should evaluate the delay in bringing him to trial by reference to Ohio's speedy trial statute, R.C. 2945.71. *Id.* at 13.

**{¶ 13}** The Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution, guarantee all criminal defendants the right to a speedy trial. *State v. Gatewood*, 2d Dist. Clark No. 2010 CA 18, 2012-Ohio-202, ¶ 16. Ohio's speedy trial statute, R.C. 2945.71, "was [enacted] to [realize] the constitutional protection of [this] right," but the statute does not apply to criminal convictions that have been overturned on appeal. *Brecksville v. Cook*, 75 Ohio St.3d 53, 55, 661 N.E.2d 706 (1996); *State v. Large*, 2015-Ohio-33, 26 N.E.3d 328, ¶ 10 (2d Dist.); *Gatewood* at ¶ 18. Instead, when a defendant's conviction has been reversed on appeal, the time limitation for bringing the defendant to trial is a " 'reasonable period consistent with constitutional standards.' " *State v. Hull*, 110 Ohio St.3d 183, 2006-Ohio-4252, 852 N.E.2d 706, ¶ 20, quoting *Barker v. Wingo*, 407 U.S. 514, 523, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *State v. Kerby*, 2d Dist. Clark No. 2006 CA 73, 2007-Ohio-3810, ¶ 17.

**{¶ 14}** To determine whether an accused has been denied his right to a speedy trial subsequent to appellate reversal, a court should assess four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion, if any, of his right to speedy trial; and (4) the prejudice, if any, to the defendant. *See Hull* at ¶ 22, citing *Barker* at 530. This analysis is a "balancing test" that can only be applied "on an ad hoc basis," or in other words, in light of the circumstances of a given case. *See Barker* at 530.

**{¶ 15}** Although none of the factors is controlling, the length of the delay is

particularly significant because it acts "to some extent [as] a triggering mechanism." *Id.* Absent a "delay [that] is presumptively prejudicial, there is no necessity for inquiry into the other factors," but because the right to a speedy trial is quantitatively imprecise, a court must evaluate "the peculiar circumstances of [a] case" to decide whether the delay in that case warrants further inquiry. *See id.*; *see also Hull* at ¶ 22-23. As a rule, a "delay becomes presumptively prejudicial as it approaches one year." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 90, citing *Doggett v. United States*, 505 U.S. 647, 652 fn.1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

**{¶ 16}** Long and the State alike adopt the premise that the delay in the instant matter began with our remand on March 7, 2016, and ended with Long's filing of his second motion to dismiss on August 7, 2017. The State concurs with Long that this interval was of sufficient duration "to warrant * * * consideration of the [other] *Barker* factors." *See* Appellee's Br. 7.

**{¶ 17}** Initially, we find that the delay would more appropriately be calculated from the date on which the trial court overruled Long's first motion to dismiss, October 26, 2016, rather than from the date on which the case was remanded. Following remand on March 7, 2016, the trial court held a review hearing on June 22, 2016, and a status conference on September 1, 2016, at which time it scheduled a trial for September 28, 2016. Long then filed his first motion to dismiss on September 21, 2016. Having been filed merely one week before the trial was set to begin, Long's first motion to dismiss led the court, not unreasonably, to continue the trial to allow time for the State to respond and for the court itself to issue a decision.

**{¶ 18}** Running from October 26, 2016, through the date on which Long filed his

second motion to dismiss, August 7, 2017, the length of the delay was 285 days, or approximately nine and one-half months. Long entered his pleas of no contest an additional 45 days later, on September 21, 2017, which was 330 days, or approximately 11 months, after the trial court overruled his first motion. The delay, then, was less than one year and was not so protracted that it should necessarily be deemed "presumptively prejudicial."[2] We find accordingly that the first *Barker* factor weighs neither in Long's favor, nor the State's.

**{¶ 19}** The reason for the delay appears to be the inattention of the trial court and the State. Inattention, or "negligence[,] is obviously to be weighed more lightly than a deliberate intent to harm [an] accused's defense, [though] it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Doggett*, 505 U.S. at 657, 112 S.Ct. 2686, 120 L.Ed.2d 520. Toleration "of such negligence varies inversely with its protractedness." (Citation omitted.) *Id.*

**{¶ 20}** Here, the record includes no evidence that the State sought to gain an advantage by actively maneuvering to extend Long's wait for a trial, and of note, Long himself took no action for more than nine months after the trial court overruled his first motion to dismiss. Yet, given that we view the delay itself as only bordering on presumptively prejudicial, we find for purposes of the second *Barker* factor that the collective inattention of the trial court and the State should weigh in Long's favor, but only

---

[2] The term " 'presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which" a court theoretically should "deem the delay unreasonable enough to trigger the *Barker* [i]nquiry." (Citation omitted.) *See Doggett*, 505 U.S. 647, 652 fn.1, 112 S.Ct. 2686, 120 L.Ed.2d 520.

marginally so.

**{¶ 21}** Long, of course, asserted his right to a speedy trial on two occasions—in his first motion to dismiss in September 2016, and in his second motion to dismiss in August 2017—following the remand of this case. Thus, the third *Barker* factor weighs in Long's favor.[3]

**{¶ 22}** Regarding the possibility that the delay in this case has caused prejudice to Long, "affirmative proof of particularized prejudice is not essential to every speedy trial claim." (Citations omitted.) *Doggett*, 505 U.S. at 655, 112 S.Ct. 2686, 120 L.Ed.2d 520. A protracted delay in bringing a defendant to trial "threatens to produce more than one sort of harm," including the anxiety and concern of the accused, oppressive pretrial incarceration, and the prospect of the defense being unfairly hampered by the passage of time. *See id.* at 654. An excessive delay may give rise to presumptive prejudice, but "presumptive prejudice alone cannot carry a Sixth Amendment claim" without consideration of the other *Barker* factors. (Citations omitted.) *See id.* at 655-656. Instead, presumptive prejudice "is part of the mix of relevant facts, and its importance increases with the length of the delay." *Id.* at 656. Long has suffered anxiety and pretrial incarceration as a result of the delay in the instant case. Nevertheless, he did not claim any particularized trial prejudice in his motions to dismiss, and the record does not suggest that he has suffered prejudice of that kind.

**{¶ 23}** To warrant relief for a speedy trial violation because of "negligence" on the part of the government that is "unaccompanied by particularized trial prejudice," the delay

---

[3] Long also asserted his right to a speedy trial after he was indicted but before he entered into his initial plea agreement with the State in May 2015.

caused by the negligence "must have lasted longer than [equivalent] negligence [that] demonstrably caus[es] prejudice." *Doggett* at 657. Though prejudice in the form of anxiety and pretrial incarceration is real, the potential impairment of an accused's ability to mount a defense is the most important consideration in the analysis of this *Barker* factor because "it skews the fairness of the entire system." *Barker*, 407 U.S. at 532, 92 S.Ct. 2182, 33 L.Ed.2d 101. Hence, "where delay[s] attributable to the negligence of the State [are] <u>more</u> than one year * * * but not exceedingly long," courts "sometimes decline to find * * * speedy trial violation[s] absent [demonstrations] of actual [trial] prejudice." (Emphasis added.) *State v. Bailey*, 2d Dist. Montgomery No. 20764, 2005-Ohio-5506, ¶ 19. Long's pretrial incarceration was not exceedingly protracted, and the record does not indicate that he has been made to endure unduly harsh degrees of anxiety or concern. In the absence of any demonstration of particularized trial prejudice, we find that the fourth *Barker* factor, like the second, weighs in Long's favor, but only marginally in his favor.

**{¶ 24}** Balancing all four of the *Barker* factors—none of which is controlling—we conclude that the delay of 11 months, from October 26, 2016, when the trial court overruled Long's first motion to dismiss, until September 21, 2017, when Long pleaded no contest to two charges, has not resulted in a violation of Long's constitutional right to a speedy trial. *See Barker* at 529-530 (indicating that the four-factor balancing test is flexible and should be applied "on an ad hoc basis"). The bulk of the delay was caused by governmental inattention, as opposed to strategic maneuvering for advantage, and Long has not made a showing of any particularized trial prejudice. *Bailey* at ¶ 19; *see also State v. Cassell*, 2d Dist. Clark No. 09 CA 0064, 2011-Ohio-23, ¶ 20-23. Moreover, at 11 months in length, the delay was not so protracted that it must be treated as

presumptively prejudicial.

**{¶ 25}** The trial court reached essentially the same conclusion in its decision on Long's second motion to dismiss, which we review for abuse of discretion. *State v. Jackson*, 2d Dist. Montgomery No. 24430, 2012-Ohio-2335, ¶ 26; *see also, e.g., Cassell* at ¶ 12 (noting that a trial court's ruling on a motion to dismiss based upon an alleged violation of a defendant's constitutional right to a speedy trial is reviewed for abuse of discretion); *State v. Perkins*, 2d Dist. Clark No. 08-CA-0081, 2009-Ohio-3033, ¶ 7 (same); *Bailey* at ¶ 7-8 and 21 (same). Despite its reliance on *State v. Patton*, 117 Ohio App.3d 86, 689 N.E.2d 1030 (2d Dist.1996), which is inapposite, it reached a conclusion that was not arbitrary, unconscionable or unreasonable, irrespective of the foregoing flaw in its reasoning process.[4] *See State v. Heisey*, 2015-Ohio-4610, 48 N.E.3d 157, ¶ 23 (2d Dist.) (noting that an abuse of discretion refers to "a decision that is unreasonable, unconscionable, or arbitrary"). We find, then, that trial court did not abuse its discretion by overruling Long's second motion to dismiss.

**{¶ 26}** The dissent proposes that we adopt what appears to be the prevalent standard of review in this state for constitutional speedy trial claims, pursuant to which a trial court's ruling on a motion to dismiss based upon an alleged violation of a defendant's constitutional right to a speedy trial is deemed to present a mixed question of law and fact. *See, e.g., State v. Burks*, 8th Dist. Cuyahoga No. 106639, 2018-Ohio-4777, ¶ 22.

---

[4] A decision is unreasonable when it is made without the use of a sound reasoning process. *State v. Heisey*, 2015-Ohio-4610, 48 N.E.3d 157, ¶ 23 (2d Dist.). Acknowledging that the *Patton* opinion is inapposite to the instant matter, the trial court's decision was not rendered entirely unreasonable as a result of its reliance on *Patton*, even though that reliance was arguably unreasonable in isolation.

Accordingly, an appellate court reviews de novo the trial court's resolution of legal issues but "afford[s] great deference" to the trial court's findings of fact—albeit only "if [they] are supported by competent, credible evidence." *See id.*

**{¶ 27}** We decline to adopt this standard for two reasons. First, the present formulation of the abuse of discretion standard is virtually indistinguishable because "[n]o court—not a trial court, not an appellate court, nor even a supreme court—has the authority, within its discretion, to commit an error of law"; thus, even pursuant to the abuse of discretion standard, a trial court's application of law is reviewed de novo. *See State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 70. A trial court's decision, furthermore, will be found to be an abuse of discretion when it is "unsupported by the evidence"; consistent wtih this principle, a trial court's findings of fact could hardly fail to constitute an abuse of discretion in the absence of competent, credible evidence. *See State v. Nichols*, 195 Ohio App.3d 323, 2011-Ohio-4671, 959 N.E.2d 1082, ¶ 16 (2d Dist.) (describing the abuse of discretion standard). Second, the balancing test set forth in the *Barker* opinion consists of "factors," rather than elements, and in our view, the application of a factor-based test is intrinsically discretionary. *Barker*, 407 U.S. at 530-534, 92 S.Ct. 2182, 33 L.Ed.2d 101.

**{¶ 28}** Yet, even pursuant to the standard of review advocated by the dissent, we would reach the same conclusion in this case. The trial court expressly incorporated no findings of fact into its journalized decisions on Long's motions, and the parties themselves have neither raised nor contested any issues of fact. With respect to the *Barker* factors, which the court likewise did not expressly incorporate into its decisions, we have effectively found de novo that the trial court did not commit an error of law by

overruling Long's motions. Long's assignment of error is overruled.

### III. Conclusion

**{¶ 29}** Long's constitutional right to a speedy trial was not violated in this case. The delay of 11 months—from the entry of the trial court's decision overruling his first motion to dismiss, until the hearing at which he pleaded no contest to two charges—was caused by inattention rather than manipulation, and Long has not demonstrated that the delay caused any particularized prejudice to his defense. Arguably, furthermore, the length of the delay in this case was not of sufficient duration to be deemed presumptively prejudicial. We find accordingly that the trial court did not abuse its discretion by overruling Long's second motion to dismiss, and therefore, we affirm his convictions.

. . . . . . . . . . . . .

HALL, J. concurs.

FROELICH, J., dissenting:

**{¶ 30}** For 18 months following the reversal of his convictions on direct appeal, Long waited for his case to be resolved and did nothing to delay it, except, ironically, to file two motions to dismiss on speedy trial grounds. I would conclude, with the facts before us, that Long's constitutional right to a speedy trial was violated.

**{¶ 31}** A timeline of the relevant events is presented on the table below:

| **DATE** | **EVENT** |
|---|---|
| February 28, 2015 | Date of offense and arrest |
| March 9, 2015 | Indictment |
| May 9, 2015 | Guilty plea to two counts of aggravated robbery and one |

| | |
|---|---|
| | count of failure to comply |
| June 9, 2015 | Sentencing (11 years in prison) |
| March 7, 2016 | Conviction reversed on direct appeal; case remanded |
| June 6, 2016 | Entry: Trial court ordered that Long be transferred to Clark Co Jail |
| June 22, 2016 | Review hearing |
| September 1, 2016 | Status Conference; final pretrial conference set for September 22, 2016, and trial set for September 28, 2016 |
| September 21, 2016 | Long's first motion to dismiss on speedy trial grounds |
| September 28, 2016 | Hearing on motion to dismiss |
| October 26, 2016 | Decision: Motion to dismiss denied |
| August 7, 2017 | Long's second motion to dismiss |
| August 16, 2017 | Decision: Long's second motion to dismiss denied; apparently trial was set for this date, but no scheduling entry |
| August 21, 2017 | Entry: continuing trial date from Aug 16 due to scheduling conflict |
| August 22, 2017 | Long's motion for reconsideration of denial of motion to dismiss |
| September 7, 2017 | Decision: motion for reconsideration denied |
| September 21, 2017 | No contest plea ; Sentencing (5 years); New judgment entry |

**{¶ 32}** When a defendant's conviction has been reversed on appeal, the time limitation for bringing the defendant to trial is a "reasonable period consistent with constitutional standards." *Hull*, 110 Ohio St.3d 183, 2006-Ohio-4252, 852 N.E.2d 706; *Kerby*, 2d Dist. Clark No. 2006 CA 73, 2007-Ohio-3810, ¶ 17. Four factors are to be assessed in determining whether an accused has been constitutionally denied a speedy trial: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his or her right to speedy trial; and 4) the prejudice to the defendant. *Hull* at ¶ 22, citing *Barker*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101. No single factor controls, but the length of the delay is particularly important. *Id*. Ohio's speedy trial

statute, R.C. 2945.71, does not apply to criminal convictions that have been overturned on appeal. *E.g., State v. Gatewood*, 2d Dist. Clark No. 2010 CA 18, 2012-Ohio-202, ¶ 18.

**{¶ 33}** As an initial matter, I would employ the following appellate standard of review:

> Appellate review of a trial court's decision on a motion to dismiss for a speedy trial violation raises a mixed question of law and fact. This court applies a de novo review to the legal issues, and independently determines whether the trial court correctly applied the law to the facts of the case. However, we afford great deference to the trial court's findings of fact, if any, if the factual findings are supported by competent, credible evidence.

(Citations omitted.) *State v. Burks*, 8th Dist. Cuyahoga No. 106639, 2018-Ohio-4777, ¶ 22. We are the only appellate district not to do so.[5] *See, e.g., State v. Smith*, 5th Dist. Holmes No. 17CA0017, 2018-Ohio-3175, ¶ 46; *State v. Jaeger*, 9th Dist. Medina No. 17CA0072-M, 2018-Ohio-2994, ¶ 5; *State v. Westerfield*, 3d Dist. Crawford Nos. 3-17-15

---

[5] Our abuse of discretion standard appears to stem from *State v. Jackson*, 2d Dist. Montgomery No. 15723, 1997 WL 24786, *3 (Jan. 24, 1997), in which we stated:

> In performing an analysis in accordance with *Barker v. Wingo*, *supra*, no single factor is either necessary or sufficient to establish a deprivation of the defendant's constitutional right to a speedy trial. All four factors are related and must be considered together with other relevant circumstances, and weighed and balanced in what is often a difficult, sensitive process. *Barker v. Wingo*, at 533. *See, also, State v. Tharp* (June 22, 1994), Montgomery App. 14155, unreported.
>
> When a trial court is charged with considering a number of factors "in a difficult and sensitive balancing process," it is involved in the exercise of discretion. Consequently, when the trial court's decision is reviewed on appeal, the question is whether the trial court abused its discretion in reaching its conclusion.

and 3-17-16, 2018-Ohio-2139, ¶ 17; *State v. Phillips*, 2018-Ohio-1794, 111 N.E.3d 351, ¶ 9 (4th Dist.); *State v. Gage*, 2018-Ohio-480, 104 N.E.3d 994, ¶ 5 (1st Dist.); *State v. Keaton*, 10th Dist. Franklin No. 16AP-716, 2017-Ohio-7036, ¶ 6; *State v. Ingram*, 2017-Ohio-5685, 93 N.E.3d 1253, ¶ 22 (6th Dist.); *State v. North*, 2017-Ohio-492, 85 N.E.3d 112, ¶ 19 (12th Dist.); *State v. Elkins*, 11th Dist. Trumbull No. 2016-T-0035, 2017-Ohio-2725, ¶ 23; *State v. Farnsworth*, 7th Dist. Monroe No. 07 MO 7, 2009-Ohio-4642, ¶ 31. Regardless of the standard employed, I would conclude that Long's speedy trial rights were violated.

**{¶ 34}** Addressing the length of the delay, the majority opinion focuses on the period from October 26, 2016, the date that the trial court overruled Long's first motion to dismiss, and August 7, 2017, the date that Long filed his second motion to dismiss. In doing so, it concludes that this delay – amounting to 285 days[6] – was less than one year and not "presumptively prejudicial," resulting in the first *Barker* factor not weighing in favor of either Long or the State.

**{¶ 35}** I disagree that the speedy trial delay should be calculated from the date on which the trial court overruled Long's first motion to dismiss. Upon our reversal of Long's conviction on March 7, 2016, Long was again being held on these pending charges. Long's filing of his first motion to dismiss constituted a tolling event that stopped the speedy trial calculation until that motion was resolved. To toll means to suspend or

---

[6] R.C. 2945.71, Ohio's speedy trial statute, was enacted to implement the constitutional guarantee of a speedy trial. *See, e.g., Brecksville v. Cook*, 75 Ohio St.3d 53, 55, 661 N.E.2d 706 (1996). As noted above, that statute does not apply to Long's circumstances. Nevertheless, it is instructive that the statute allows only 90 days to bring a felony defendant who is in custody to trial, absent tolling events.

interrupt; tolling events do not reset the speedy clock back to zero.[7] Even excluding the time required for the trial court to resolve Long's motions and the delay due to the August 2017 scheduling conflict, Long's case was pending after remand for more than one year.[8] I would conclude that the delay was presumptively prejudicial.[9]

**{¶ 36}** Turning to the second *Barker* factor, *Barker* assigned different weights to different reasons for the delay in bringing a defendant to trial. *Barker*, 407 U.S. at 531, 92 S.Ct. 218, 233 L.Ed.2d 101. It noted that neutral reasons, such as negligence or overcrowded courts, should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. *Id*.

**{¶ 37}** This case was remanded to the trial court on March 7, 2016, following the reversal of Long's conviction. Long remained incarcerated in prison (apparently on his original overturned convictions) until June 6, 2016, when he was ordered back to the Clark County Jail on this case. The record does not indicate a basis for the more than three-month delay between the remand and the scheduled June 22, 2016 status conference.

---

[7] Taking the resetting approach (where each tolling event reset the clock to zero) to its logical extreme, a defendant could be held indefinitely in pretrial confinement without ever reaching the one-year threshold for presumptive prejudice simply by filing a motion within one year of a previous motion.

[8] With these exclusions, 483 days counted toward Long's speedy trial time. Specifically, 198 days elapsed between the remand and Long's first motion to dismiss, and an additional 285 days elapsed between the denial of Long's first motion and the filing of his second motion to dismiss.

[9] Although not binding on this appellate court, the State conceded in its appellate brief that the time between the remand from Long's prior appeal (March 2016) and the filing of Long's second motion (August 2017) was "sufficiently long to warrant further consideration of the *Barker* factors."

At that status conference, the parties agreed that all discovery was complete, and Long asked for a trial date. No trial was scheduled. Another status conference was held on September 1, 2016, at which a trial was set for September 28, 2016.

**{¶ 38}** The September 21 filing of Long's first motion to dismiss on speedy trial grounds prompted the court to vacate the scheduled September 28, 2016 trial date. However, after the trial court overruled that motion on October 26, 2016, there is nothing in the record to explain the delay between October 26, 2016 and August 7, 2017, when Long filed another motion to dismiss. No demands for discovery were made (the parties had already indicated that discovery was complete), and no motions were filed; there was no scheduled trial date. If anything did happen with the case, it is not in the record.

**{¶ 39}** As stated in *Barker*, it is the government's ultimate obligation to ensure that an accused is brought to trial within a reasonable time. The State must act with "reasonable diligence" in pursuit of the charges. There is nothing in the record to reflect that the State made efforts to request a timely trial date from the court. And while a trial court's failure to act promptly is not "deliberate conduct" by the State, it nevertheless weighs against the State since "the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531, 92 S.Ct. 218, 233 L.Ed.2d 101. The second *Barker* factor weighs in Long's favor.

**{¶ 40}** Third, the record also reflects that Long diligently asserted his speedy trial right. Long invoked his right to a speedy trial in March 2015 (prior to his initial guilty pleas), when defense counsel entered an appearance and demanded, among other things, a speedy trial for Long. At the September 28, 2016 hearing on Long's first motion to dismiss, defense counsel presented as an exhibit that March 2015 demand for a

speedy trial. Long asserted his right to a speedy trial in September 2016 – six months after the remand -- when he filed his first motion to dismiss. Long asserted his right to a speedy trial again in August 2017 -- 18 months after the remand. Long did not, at any point, waive his speedy trial rights, and it cannot be said that Long sat on his rights.

**{¶ 41}** The final factor is the prejudice to Long. *Barker* identified three interests that the speedy trial right was designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Barker* at 532. "[C]onsideration of prejudice is not limited to the specifically demonstrable, and * * * affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett*, 505 U.S. 647, 655, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). As stated in *Barker*:

> We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious. It is especially unfortunate to impose them on those persons who are ultimately found to be innocent. Finally, even if an accused is not incarcerated prior to trial, he is still disadvantaged by

> restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility.

*Barker* at 532-533.

**{¶ 42}** At the first status conference following remand, the parties confirmed discovery had been completed, the parties anticipated no changes to their witnesses or exhibits, and no pretrial motions were anticipated; there is no indication that Long's defense was impaired due to any delay in resolving his case. Consequently, the primary interests to Long revolved around preventing oppressive pretrial incarceration and minimizing the anxiety caused from the unresolved charges.

**{¶ 43}** Long has been incarcerated on these charges since his arrest on February 28, 2015.[10] Although Long originally pled guilty in May 2015, he was again presumed innocent of the charges upon our reversal of his conviction on direct appeal. Following our remand on March 7, 2016, the trial court set a trial date of September 28, 2016, which was continued due to Long's first motion to dismiss. After the denial of Long's first motion to dismiss, Long's charges remained pending for more than nine additional months with no explanation for the substantial delay. The fact that Long had previously been sentenced to a long prison term or that he might anticipate receiving a long prison term again does not mitigate the prejudice that Long (while presumed innocent) experienced from having charges pending for a significant length of time, particularly after the denial of his first motion to dismiss, without apparent justification.

**{¶ 44}** The only motions that were filed during that 518-day delay were Long's two

---

[10] Long's incarceration between February 28, 2015 and September 25, 2018, the submission date of this appeal, amounts to 1,304 days (approximately three years and seven months), and obviously, he is still incarcerated.

motions to dismiss due to violations of his right to a speedy trial and one motion for reconsideration of the denial of his second motion. Under these factual circumstances, I would conclude that the length of the pretrial delay was prejudicial and that Long's constitutional right to a speedy trial was violated.

Copies sent to:

Andrew P. Pickering
S. Todd Brecount
Hon. Richard J. O'Neill