**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Long*, Slip Opinion No. 2020-Ohio-5363.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-5363

THE STATE OF OHIO, APPELLEE, *v*. LONG, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Long*, Slip Opinion No. 2020-Ohio-5363.]**

*Criminal law—Speedy trial—Date on which an appellate court orders a case remanded is the appropriate date to start the clock to determine the relevant length of the delay for speedy-trial purposes—A motion to dismiss that alleges a violation of the right to a speedy trial does not reset the speedy-trial clock—The four factors to be considered in determining whether there has been a denial of a defendant's constitutional right to a speedy trial are (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the prejudice to the defendant.*

(No. 2019-0181—Submitted February 12, 2020—Decided November 24, 2020.)

APPEAL from the Court of Appeals for Clark County,

No. 2017-CA-84, 2018-Ohio-5163.

_____

**O'CONNOR, C.J.**

{¶ 1} In this appeal, we determine whether a delay in proceedings that occurred after the Second District Court of Appeals reversed appellant John W. Long's convictions and remanded the matter violated his speedy-trial rights under the United States and Ohio Constitutions. For the following reasons, we conclude that it did. Accordingly, we reverse the court of appeals' judgment, which upheld Long's convictions in a second appeal, and vacate the convictions.

## Facts and Procedural Background

{¶ 2} In 2015, following a guilty plea, the trial court convicted Long of two counts of aggravated robbery and one count of failure to comply with an order or signal of a police officer and sentenced him to serve an aggregate sentence of 11 years in prison. On March 7, 2016, the Second District Court of Appeals reversed Long's convictions and remanded to the trial court for further proceedings because the trial court had not fully advised Long of his constitutional rights during his plea hearing. *State v. Long*, 2d Dist. Clark No. 2015-CA-64, 2016-Ohio-837. The facts relevant to this appeal begin when the court of appeals remanded the case.

{¶ 3} Long remained in the London Correctional Institution until June 21, 2016, when he was transferred to the Clark County jail in anticipation of a hearing on remand. At a hearing on June 22, 2016, the state told the trial court that it was willing to extend the same plea offer to which Long had originally pleaded guilty, with an agreed sentence of 11 years as had been originally imposed. Long's counsel asked the court to set the matter for trial. The court said it would order the case to be scheduled for a final pretrial and ordered Long to remain in the Clark County jail "pending the new trial date."

{¶ 4} At a pretrial conference held on September 1, the state reiterated that it was prepared to extend the same plea offer and the court set a trial date of September 28. On September 21, Long moved to dismiss on speedy-trial grounds, arguing that the passage of 198 days from the date on which the Second District

remanded the case violated his constitutional right to a speedy trial. The next day, September 22, the trial court held a pretrial conference and set a date for the state to respond to Long's motion to dismiss. The court also stated it would use the September 28 trial date to hold a hearing on the motion to dismiss and that it would be the last date for Long to accept the offered plea agreement.

{¶ 5} On September 28, the trial court held a hearing on Long's motion to dismiss. At the hearing, Long's counsel submitted a notice that Long was pleading not guilty and demanding his right to a speedy trial and trial by jury. The court heard brief statements from counsel for the parties, stated that it had not yet reviewed the state's opposition to Long's motion to dismiss, and allowed the parties an additional 48 hours "to file whatever filing they want to file" with regard to the motion to dismiss.

{¶ 6} On October 24, 2016, the court held a brief hearing. The court noted that the parties were waiting for a decision on Long's pending motion to dismiss and asked the bailiff why the case was put back on the hearing docket. The bailiff stated that he believed the state had requested the hearing, but counsel for the state was not present to respond. The court then adjourned the hearing. By entry dated October 26, the court denied Long's motion to dismiss.

{¶ 7} The next activity on the court's docket occurred over nine months later, on August 7, 2017, when Long moved a second time to dismiss the indictment on speedy-trial grounds. This time, Long pointed to the 518-day delay since the date on which the Second District remanded the case. The trial court denied the motion by an entry dated August 16.

{¶ 8} In an entry dated August 21, the trial court noted that the case had been scheduled for trial on August 16 but that the trial had been continued due to the court's scheduling conflict with another jury trial. However, the August 16 trial date does not appear on the docket.

{¶ 9} On August 22, Long moved for reconsideration of the trial court's denial of his second motion to dismiss. The trial court denied that motion on September 7.

{¶ 10} On September 21, the court held a hearing at which Long pleaded no contest to the charges of having a weapon under disability and failing to comply with an order or signal of a police officer; the other charges were dropped. The plea agreement included a suggested sentence of a total of 60 months in prison. The trial court imposed the agreed sentence and allowed jail-time credit from February 28, 2015.

{¶ 11} On appeal, the Second District affirmed, concluding that Long's constitutional right to a speedy trial was not violated during the trial court's remand proceedings.

{¶ 12} We accepted Long's discretionary appeal on the following proposition of law:

> A motion to dismiss alleging a violation of the right to a speedy trial does not reset speedy trial time. When convictions are overturned on an appeal, courts must consider all applicable speedy trial time, beginning on the date that the charges are remanded.

*See* 155 Ohio St.3d 1445, 2019-Ohio-1707, 122 N.E.3d 206.

**Analysis**

{¶ 13} The speedy-trial protections of the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution apply when a conviction is vacated and the case remanded for retrial. *State v. Hull*, 110 Ohio St.3d 183, 2006-Ohio-4252, 852 N.E.2d 706, ¶ 20. The time within which a defendant must be brought to trial is " 'a reasonable period consistent with

constitutional standards.' " *Id*. at ¶ 20, quoting *Barker v. Wingo*, 407 U.S. 514, 523, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

{¶ 14} To determine whether there has been a denial of a defendant's constitutional right to a speedy trial, the court considers four factors identified in *Barker*: "(1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the prejudice to the defendant." *Hull* at ¶ 22, citing *Barker* at 530. No single factor controls the analysis, but the length of the delay is important. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker* at 530. Generally, a delay that approaches one year is presumptively prejudicial. *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), fn. 1.

{¶ 15} Review of a speedy-trial claim involves a mixed question of law and fact. Therefore, we defer to the trial court's factual findings if they are supported by competent, credible evidence, but we review the application of the law to those facts de novo. *See State v. Barnes*, 8th Dist. Cuyahoga No. 90847, 2008-Ohio-5472, ¶ 17.

### *Effect of motion to dismiss*

{¶ 16} Both parties agree that the date on which the Second District ordered the case remanded—March 7, 2016—was the appropriate time to start the clock to determine the relevant length of the delay here for speedy-trial purposes. We agree. The court of appeals' basis for choosing a different date—the date on which the trial court overruled Long's first motion to dismiss on speedy-trial grounds—despite the state's concession that the date of the remand order was the proper starting point, is unclear. But we see no reason to search for a justification. Using the motion to dismiss to "reset" the start of the speedy-trial clock back to zero unfairly penalizes a defendant for invoking the speedy-trial right. Such a rule could

even create the absurd result that a delay would never reach the presumptively prejudicial one-year period.

{¶ 17} The court of appeals' incorrect determination regarding when the clock started led that court to conclude that the delay was approximately 11 months and, therefore, not presumptively prejudicial. Because we conclude that the proper starting point is the date of remand, we find that more than a year passed before Long entered his plea. Specifically, we agree with the dissenting opinion in the court of appeals that more than 483 days had elapsed between the date of remand and the date on which Long filed his second motion to dismiss, even excluding the time during which Long's first motion to dismiss was pending. Accordingly, we presume that the delay was sufficiently prejudicial to warrant consideration of the *Barker* factors to determine whether there was an unreasonable violation of Long's speedy-trial rights.

### *Calculate speedy-trial time from remand*

{¶ 18} Long points out that the only *Barker* factor that the court of appeals did not weigh in Long's favor was the first factor—the length of the delay. He argues that this conclusion was based on the court of appeals' incorrect finding that the relevant delay was less than one year and not "presumptively prejudicial." Long therefore argues that all four *Barker* factors weigh in his favor and that this court should vacate his conviction.[1]

{¶ 19} As discussed above, we agree with Long that the relevant length of delay in his trial was in excess of one year after the matter was remanded. Thus, we find the delay is presumptively prejudicial. *See State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 90, citing *Doggett*, 505 U.S. at 652, 112

---

1. We recognize that the proposition of law accepted here relates only to the effect of the motion to dismiss on the proper speedy-trial calculation. And, as noted above, the state has conceded that the speedy-trial clock started when the case was remanded. But because our review is de novo, we independently review the application of all the *Barker* factors to the facts here.

S.Ct. 2686, 120 L.Ed.2d 520, fn. 1 ("delay becomes presumptively prejudicial as it approaches one year"). We conclude that this factor weighs in Long's favor.

{¶ 20} The court of appeals' incorrect finding about the relevant delay also affected its conclusion regarding the second *Barker* factor—the reason for the delay. The court of appeals found that even though the delay after remand was due to the inattention of the trial court and the state, the second factor weighed "only marginally" in Long's favor because the delay was "only bordering" on being presumptively prejudicial. 2018-Ohio-5163, ¶ 20. As discussed above, the relevant delay was well over one year. When the length of the delay is coupled with the trial court's and the state's inattention to Long's case on remand, we conclude that the second *Barker* factor decidedly tips in Long's favor.

{¶ 21} We further conclude, as did the court of appeals, that the third *Barker* factor—the defendant's assertion of his right to a speedy trial—also weighs in Long's favor. Indeed, the consideration of this factor demonstrates why the court of appeals' decision to start the speedy-trial clock from zero after the court denied Long's first motion to dismiss is inappropriate. It hardly makes sense to task a defendant with the responsibility to assert his speedy-trial right in order to preserve a constitutional challenge if the assertion of that right restarts the speedy-trial clock at zero. Here, Long's two motions to dismiss on speedy-trial grounds demonstrate that he did assert his right to a speedy trial; therefore, this factor weighs in Long's favor.

{¶ 22} The court of appeals concluded that the fourth factor—prejudice—marginally weighed in Long's favor. The prejudice factor in the analysis "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532, 92 S.Ct. 2182, 33 L.Ed.2d 101. The three interests are "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that

the defense will be impaired." *Id.* The third interest warrants special emphasis because prejudice in that context "skews the fairness of the entire system." *Id.*

{¶ 23} Here, the court of appeals noted that "Long has suffered anxiety and pretrial incarceration as a result of the delay in the instant case." 2018-Ohio-5163 at ¶ 22. It also noted that Long "did not claim any particularized trial prejudice in his motions to dismiss, and the record does not suggest that he has suffered prejudice of that kind." *Id.*

{¶ 24} The state argues that the prejudice factor weighs in the state's favor because "there was no trial [and] the delay did not affect witnesses, evidence, or testimony." The state also asserts that Long's "interest in oppressive pretrial confinement is limited" because Long agreed in his plea agreement to serve a prison sentence. The state contends that Long made no showing of anxiety, and it further asserts that Long initially "expressed a willingness to serve at least 3 years in prison, and as a part of his no contest plea, he was willing to spend 5 years."

{¶ 25} It is true that Long has not asserted a particularized prejudice relating to the impairment of his defense. But, contrary to the state's assertion, the prejudice factor is not lacking simply because Long was allegedly willing to serve a prison term greater than the time he was confined after the remand and before his plea. The relevant prejudice inquiry looks at the conditions and circumstances of the delay before trial. If we looked only at the outcome—that is, the length of the ultimate prison sentence imposed or the nature of the plea agreement ultimately reached—the speedy-trial right would be no more than a harmless-error inquiry.

{¶ 26} The United States Supreme Court has recognized that unreasonable pretrial delay produces more than one sort of harm. *Doggett*, 505 U.S. at 654, 112 S.Ct. 2686, 120 L.Ed.2d 520. For that reason, the pretrial delay, including " 'oppressive pretrial incarceration' " and " 'anxiety and concern of the accused,' " are relevant factors to the prejudice inquiry. *Id.*, quoting *Barker*, 407 U.S. at 532,

8

92 S.Ct. 2182, 33 L.Ed.2d 101. And, in *Barker*, the court described the serious disadvantages to an accused in pretrial incarceration:

> The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time.

*Barker* at 532-533. Additionally, the court recognized in *Doggett* that negligence in bringing an accused to trial does not compel relief in every case, but "neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him." *Doggett* at 656-657.

{¶ 27} Here, the court of appeals found that the "reason for the delay appears to be the inattention of the trial court and the State." 2018-Ohio-5163 at ¶ 19. Indeed, there is no dispute that after Long's first attempt to assert his speedy-trial right, the court and prosecution did nothing to advance the case for more than nine months despite the state's willingness to offer the same plea agreement it had offered before he was first convicted. We agree with the court of appeals' conclusion that Long's pretrial incarceration for a presumptively prejudicial period coupled with the anxiety of pending charges on remand tip the balance of prejudice toward Long. Based on these circumstances, we conclude that the fourth *Barker* factor of prejudice weighs in Long's favor.

{¶ 28} Because all four *Barker* factors weigh in Long's favor, we conclude that Long's right to a speedy trial was violated after his case was remanded to the trial court for retrial. Accordingly, Long's conviction must be vacated.

## Conclusion

{¶ 29} For the foregoing reasons, we reverse the Second District's judgment and vacate Long's conviction. Given that Long was released from prison

on May 23, 2019, and thereafter served a six-month period of postrelease control that terminated in November 2019, there is no need to remand this matter.

Judgment reversed

and conviction vacated.

FRENCH, DONNELLY, and STEWART, JJ., concur.

KENNEDY, J., concurs in the court's judgment to the extent that it reverses the judgment of the court of appeals, because the speedy-trial clock begins to run on the date the court of appeals overturns a conviction and remands the case to the trial court, but dissents from this court's judgment to the extent that it vacates appellant John W. Long's conviction and would remand the cause to the court of appeals to evaluate his speedy-trial claim in light of this court's decision clarifying the law.

FISCHER, J., concurs in part and dissents in part, with an opinion.

DEWINE, J., dissents, with an opinion.

_____

**FISCHER, J., concurring in part and dissenting in part.**

{¶ 30} I agree with the portion of the court's analysis that concludes that a motion to dismiss that alleges a violation of the right to a speedy trial does not reset the speedy-trial clock and that when a conviction is overturned on an appeal, the speedy-trial clock begins to run on the date on which the court of appeals orders the case remanded. And I concur in the portion of the court's judgment reversing the judgment of the Second District Court of Appeals.

{¶ 31} I respectfully disagree, however, with the portion of the court's opinion that weighs the factors set out in *Barker v. Wingo,* 467 U.S. 514, 530, 92 S.Ct 2182, 33 L.Ed.2d 101 (1972). And I dissent from the portion of the court's judgment that vacates appellant John W. Long's convictions. I do not find any particular fault with the substance of the court's analysis on this issue; however, because the court of appeals did not have the opportunity to consider this case in

10

light of this court's clarification of the law, I would remand the cause to the Second District so that it may weigh the *Barker* factors in the first instance, applying the law as set forth by this court. On these bases, I would reverse the judgment of the Second District and remand the cause to that court to resolve the remaining issues in this appeal.

_____

**DEWINE, J., dissenting.**

{¶ 32} The majority concludes that the delay that occurred in this case violated the defendant's right to a speedy trial under the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. It justifies this result by referring to the factors outlined by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). But the majority fails to properly apply the factors, substituting broad conclusory statements and cursory reasoning for the careful balancing required under *Barker*. When the factors are properly applied, it is clear that there is no constitutional violation. I therefore dissent.

## I. The history of this case

{¶ 33} The majority skips past the facts of the underlying charges. But because "the peculiar circumstances of the case" are relevant to the speedy-trial analysis, *id.* at 530-531, I will not.

{¶ 34} John Long was accused of approaching a line of cars in the drive-through lane of a Clark gas-station convenience store in Springfield, Ohio. Going down the line from one car to the next, Long walked up to the window of each car, stuck out a gun, and demanded money from the people inside. Seeing what Long was doing, the drivers tried to back out—but they were blocked in by other cars and were unable to escape.

{¶ 35} Long fled the scene in a car when police arrived. After being pursued for several blocks, Long jumped out of the car and attempted to get away

on foot, but police caught up and apprehended him. Police believed that Long had thrown a gun out of the car during the chase. When they retraced their route, they found a PK .22-caliber semi-automatic handgun on the side of the road.

{¶ 36} Based on those events, Long was indicted on ten charges:

- five counts of aggravated robbery, each with an attendant firearm specification;
- one count of kidnapping;
- one count of failing to comply with a signal of a police officer;
- two weapons charges—having a weapon while under a disability and improper handling of a firearm in a motor vehicle; and
- one count of tampering with evidence.

{¶ 37} Long worked out a deal with the state in which he pleaded guilty to two of the aggravated-robbery counts and the failure-to-comply charge. The trial court convicted him and sentenced him to 11 years in prison. Long appealed, and on March 7, 2016, the Second District Court of Appeals reversed his convictions because of deficiencies in the plea colloquy and remanded the matter to the trial court. 2016-Ohio-837.

{¶ 38} Our review of Long's speedy-trial claim begins with the remand order. The trial court did not order that Long be transferred from prison to the county jail for further proceedings until June 6, three months after the court of appeals had entered its judgment. Long's first court date following remand took place on June 22, at which time the state offered Long the same plea deal he had previously accepted. Long's attorney said he needed to discuss the options with his client and consider "whether or not any pretrial motions should be filed." Defense counsel asked the court to set the case for trial but did not object when the judge scheduled the matter for a final pretrial instead. The judge told counsel that the pretrial would be used "for a hearing on any motions that would get filed."

{¶ 39} Counsel filed no motions during that interim. When the parties returned for the pretrial on September 1, the judge verified that discovery was complete and that there were no other matters for the court to resolve before trial. This time, the court directly asked defense counsel if he planned to file any pretrial motions, and counsel said no. Satisfied that the parties were ready for trial, the court scheduled a jury trial for September 28—a little over six months after the case was remanded to the trial court. The court directed the parties to report for a pretrial the week before the trial date.

{¶ 40} The day before the pretrial—exactly one week before trial was set to begin—Long's attorney filed a motion to dismiss on speedy-trial grounds. As a result of the last-minute filing, the court postponed the jury trial and used the September 28 trial date to hold a hearing on the motion instead. The trial court issued its decision denying the motion a month later, on October 26.

{¶ 41} What happened to the case after that is unclear. The next item reflected on the docket is the filing of Long's second motion to dismiss nine months later, on August 7, 2017. The trial court subsequently put on an entry saying that Long's case had been scheduled for a jury trial on August 16 but needed to be rescheduled because another jury trial was ongoing. The August 16 trial date does not appear on the docket. (Indeed, after the remand, none of the hearing dates in this case appear on the docket.)

{¶ 42} The court ultimately denied Long's second motion to dismiss, and Long entered no-contest pleas to the weapons-under-disability and failure-to-comply charges, both felonies of the third degree. The state and Long agreed to a sentence of five years in prison, which the trial court imposed. In all, a period of 17 months passed between the dates that the court of appeals remanded the case to the trial court and that Long filed his second motion to dismiss.

{¶ 43} Long filed a second appeal, contending that the charges against him should have been dismissed because the state had violated his constitutional right

to a speedy trial under the state and federal Constitutions. The Second District determined that there had been no speedy-trial violation and upheld Long's convictions. 2018-Ohio-5163. We accepted Long's petition for discretionary review.

## II. The right to a "speedy public trial" under the Ohio Constitution

{¶ 44} Article I, Section 10 of the Ohio Constitution provides: "In any trial, in any court, the party accused shall be allowed * * * a speedy public trial by an impartial jury * * *." Long bases his speedy-trial claim in part on this clause but offers no analysis of the state constitutional protection beyond a single citation to it in his merit brief. Instead, both Long and the majority presume that the standards set forth by the United States Supreme Court for reviewing speedy-trial claims under the Sixth Amendment apply equally to the Ohio provision.

{¶ 45} The same assumption is reflected in this court's precedent, which has routinely lumped the two constitutional provisions together and resolved both using federal standards, without any consideration of the text or history of the state provision. *See, e.g., State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 87-88; *State v. Hull*, 110 Ohio St.3d 183, 2006-Ohio-4252, 852 N.E.2d 706; *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72, ¶ 38. When addressing an Ohio constitutional provision that parallels its federal counterpart, it's worth noting that "even if the provisions were initially understood to provide functionally the same protections, we are not bound to mirror subsequent United States Supreme Court decisions delineating the scope of the protection." *State v. Smith*, ___ Ohio St.3d ___, 2020-Ohio-4441, __ N.E.3d __, ¶ 28. Nevertheless, the parties have not advocated for a different mode of reviewing claims under Ohio's speedy-public-trial provision, so I will apply the standards promulgated by the United States Supreme Court for analyzing federal constitutional speedy-trial violations.

### III. Long's federal constitutional speedy-trial right was not violated

{¶ 46} When evaluating a claim that a defendant's Sixth Amendment right to a speedy trial has been violated, we have been instructed to weigh four factors commonly referred to as the "*Barker* factors." The relevant considerations are whether there was an "uncommonly long" delay before trial, whether the government or the defendant is "more to blame" for that delay, whether the defendant timely asserted his right to a speedy trial, and whether he suffered prejudice from the delay. *Doggett v. United States*, 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), citing *Barker*, 407 U.S. at 530, 92 S.Ct. 2182, 33 L.Ed.2d 101.

{¶ 47} As everyone agrees, the court of appeals did not calculate Long's speedy-trial time properly. The court should have considered the full 17-month period from the time the case was remanded from the court of appeals until Long filed his second motion to dismiss in reviewing the trial court's decision to deny that motion.

{¶ 48} This miscalculation affected the court of appeals' analysis with respect to each of the *Barker* factors, and they should all be freshly reviewed. I would have no problem remanding the case for the court of appeals to evaluate Long's claim and weigh the factors in view of the events of the entire 17 months. But a majority of this court has chosen to conduct that review here, and unlike the justice concurring in part and dissenting in part, I do find fault with the majority's analysis. The majority says that it is performing a de novo review of the speedy-trial claim, but its analysis is cursory and unduly deferential to the court of appeals' conclusions. Further, it fails to follow applicable federal precedent in its application of the *Barker* factors.

{¶ 49} I will address each of the *Barker* factors in turn.

*A. The length of the delay*

{¶ 50} The United States Supreme Court has told us that the length of the delay is in part a "triggering mechanism"; in other words, the length of the delay must be sufficiently prejudicial to warrant further review of the speedy-trial claim. *Barker*, 407 U.S. at 530, 92 S.Ct. 2182, 33 L.Ed.2d 101. There is no hard line for when this threshold has been satisfied; it depends on the circumstances of the case. *Id*. at 530-531. The Supreme Court has suggested that delays nearing one year are often sufficient to trigger a full inquiry. *Doggett*, 505 U.S. at 652, 112 S.Ct. 2686, 120 L.Ed.2d 520, fn. 1 ("*Depending on the nature of the charges*, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year" [emphasis added]). As the Supreme Court has explained, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker* at 531.

{¶ 51} If the length of time "has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay," *Doggett* at 652, quoting *Barker* at 530, then the court must engage in a second inquiry regarding the length of the delay. The court should consider, "as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id*.

{¶ 52} The length of the delay in this case is 17 months. As detailed above, Long was facing a multitude of serious charges involving multiple victims and witnesses; therefore, more time is tolerable than in cases involving simpler, lower-level crimes. But it is also true that no additional discovery took place after remand and the parties indicated early on that they were prepared to proceed to trial. Thus, I agree with the majority's conclusion that in this case, a 17-month delay is sufficient to warrant further investigation into Long's speedy-trial claim.

{¶ 53} But the majority skips over the second part of the length-of-the-delay analysis. In this case, the delay extended just five months beyond the roughly one-

year threshold for review. Thus, while this factor weighs in Long's favor, it does so only minimally. *See State v. Myers*, 97 Ohio St.3d 335, 2002-Ohio-6658, 780 N.E.2d 186, ¶ 66 (finding a delay of 17 months to be "barely" sufficient to trigger review in a capital-murder case).

### B. The reasons for the delay

{¶ 54} Let's turn to the majority's analysis of the second factor: the reason for the delay. The majority begins by noting that "the court of appeals found that * * * the delay after remand was due to the inattention of the trial court and the state." Majority opinion at ¶ 20. Because the court of appeals believed the total delay lasted less than 12 months, it concluded that the state's negligence weighed only marginally in Long's favor. 2018-Ohio-5163 at ¶ 20. Rather than review the court of appeals' conclusion, the majority just starts where the court of appeals left off. It notes that the delay lasted 17 months and then declares: "When the length of the delay is coupled with the trial court's and the state's inattention to Long's case on remand, we conclude that the second *Barker* factor decidedly tips in Long's favor." Majority opinion at ¶ 20.

{¶ 55} The majority provides zero analysis of the reasons for the delay. It simply defers to the court of appeals' conclusions regarding the reasons and the weight to be given those reasons and then turns the dial more in Long's favor because the length of time the court of appeals relied upon was incorrect.

{¶ 56} When evaluating the reasons for the delay, we have been instructed that "different weights should be assigned to different reasons." *Barker*, 407 U.S. at 531, 92 S.Ct. 2182, 33 L.Ed.2d 101. Reasons for the delay are characterized as deliberate, neutral, or valid. *Id*. at 531; *see also United States v. Black*, 918 F.3d 243, 260 (2d Cir.2019); *United States v. Hall*, 551 F.3d 257, 272 (4th Cir.2009). Deliberate attempts to hamper the defense weigh heavily against the government. *Barker* at 531. Delays occasioned by official negligence or overcrowded courts are "more neutral" and therefore weigh less heavily, though they ultimately count

against the government. *Id*. A valid reason will "justify appropriate delay." *Id*. In addition, "a court should consider whether some of the delay is attributable to the defendant." *United States v. Brown*, 498 F.3d 523, 531 (6th Cir.2007).

{¶ 57} There is no suggestion that the government deliberately delayed in bringing Long to trial. Much of the 17-month period between remand and Long's second motion to dismiss is attributable to government negligence; according to the state, that negligence was initially due to the court's case flow and subsequently due to inattention. These reasons fall into the "neutral" category, though on balance they weigh against the government.

{¶ 58} Still, not all of the delay is attributable to the state. Long's attorney indicated in June, at the first appearance following remand, that he was considering filing pretrial motions; as a result, the trial court explicitly stated it would address any defense motions at the September 1 pretrial. Rather than file any motions during that time, Long waited two and a half months—until the trial was only a week away—to file his motion to dismiss. When evaluating the reasons for the delay, this court should not be blind to the fact that Long's motion was timed in a way that forced his trial to be delayed. Long is fully entitled to assert his speedy-trial right, but his assertion of the right provides a valid justification for the court's decision to delay the first trial.

{¶ 59} Of course, while Long's first motion precipitated the delay following the first trial date, it does not excuse the court's subsequent inaction on the case. Thus, I would find that a greater portion of the delay is attributable to the state. But because the reasons for the state's delay are neutral, because Long's attorney did not object to the trial court's scheduling of the case in the time leading up to the first trial, and because some delay is justified as a result of Long's late motion, this factor weighs only marginally in Long's favor.

### C. Long's assertion of his speedy-trial right

{¶ 60} The third *Barker* factor involves the defendant's assertion of his speedy-trial right. The majority decides this factor in a single sentence—telling us that because Long filed two motions to dismiss in which he contended that he had been denied his constitutional right to a speedy trial, this factor weighs in his favor. But a defendant's having filed a motion to dismiss on speedy-trial grounds is not dispositive. This factor is not just a box to be checked to make sure the defendant raised the issue in the trial court (indeed, if he hadn't, this would be an easy case).

{¶ 61} The question is not only *whether* the defendant asserted his right but also *when* and *how* he did so. The right must be timely asserted. *United States v. Patterson*, 872 F.3d 426, 435 (7th Cir.2017), citing *Doggett*, 505 U.S. at 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (the defendant must assert the right "in due course"); *Hall*, 551 F.3d at 272. As the *Barker* court explained, the court should "weigh the frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection." 407 U.S. at 529, 92 S.Ct. 2182, 33 L.Ed.2d 101. An important consideration is whether a defendant's assertions put the state and the trial court on notice that he wanted a speedy trial. *Black*, 918 F.3d at 263. The majority offers no analysis on any of these points.

{¶ 62} At the hearing on the first motion to dismiss, counsel presented a written speedy-trial demand that Long had purportedly made in March 2015, soon after his indictment, prior to his initial conviction and appeal. Long's attorney contended that this demand—which he said had been given to the prosecutor at the time—was sufficient to notify the state that Long intended to assert his speedy-trial rights after the case was remanded to the trial court. But Long's attorney conceded that the March 2015 demand had never been filed or made a part of the record nor had Long filed a renewed demand after the remand.

{¶ 63} Moreover, as discussed above, the actions of Long's attorney during this period do not demonstrate an assertion of the right. Defense counsel made no

objection to the court's scheduling of the case. And while counsel did initially request that the case be set for trial, he also told the court he might file pretrial motions and acquiesced to the court's decision to set a pretrial date to rule on those anticipated motions. Counsel said nothing even remotely suggesting that his client demanded a speedy trial in the first six months after the case had been remanded.

{¶ 64} Of course, when Long did file his first motion to dismiss six months after remand, it might have put the prosecution and the court on notice that he intended to assert that right going forward. But the timing of his motion—a week before his jury trial was scheduled to begin—leaves the impression that it was filed less out of serious concern about the speed at which his case was progressing and more as a last-ditch attempt to avoid going to trial.

{¶ 65} Long's assertion of his right in his first motion to dismiss also might have had greater force had he followed it up with objections to the delay that came after. Nine months passed after the trial court's denial of Long's first motion to dismiss, during which, according to the docket, the court took no action on the case. True, the obligation ultimately falls to the government to bring a defendant to trial in a constitutionally compliant manner, but that does not negate the defendant's concomitant obligation to assert his right. *Barker*, 407 U.S. at 529, 92 S.Ct. 2182, 33 L.Ed.2d 101. It is notable that Long did nothing on the case during this time— at no time did his attorney file a renewed demand for a speedy trial or ask to have the case put on the docket to address the delay on the record. And despite the fact that none of the scheduled hearings in this case appear on the docket, the trial court indicated that Long's case had been scheduled for trial on August 16. In that event, Long's tactics leading up to his second trial date were identical to those leading up to his first: he waited until a week before trial to file his second motion to dismiss.

{¶ 66} Thus, the only two times Long can be said to have asserted his speedy-trial right following remand both occurred a week before he was scheduled to have the trial he ostensibly wanted. And in both of these instances, his assertions

of the right came after the delays he complained of—delays that he had not objected to—had already occurred. The timing of Long's motions just before trial and his general acquiescence to the delays otherwise does not convey an earnest desire to have his case move quickly. This factor does not weigh in support of finding a speedy-trial violation. *See Patterson*, 872 F.3d at 435-436 (defendant's motions to dismiss amounted to "belated assertions" of his speedy-trial right).

### D. Prejudice from the delay

{¶ 67} The majority spends the most time analyzing the fourth *Barker* factor—prejudice. As the majority notes, when evaluating prejudice from pretrial delay, we have been told to consider the extent to which the accused has suffered three types of harms: "oppressive pretrial incarceration," "anxiety and concern," and impairment to his defense. *Barker* at 532. The impact of the delay on the ability of the defendant to prepare his defense is the most important of the three. *United States v. Frias*, 893 F.3d 1268, 1273 (10th Cir.2018), citing *Barker* at 532.

{¶ 68} Long has not alleged any actual prejudice, nor could he—by every indication, the delay in this case worked to his advantage. He initially pleaded guilty to three counts, two of which were felonies of the first degree, and received an 11-year prison sentence. But the state's plea offer improved significantly with the passage of time: the state agreed to dismiss all the high-level felonies in exchange for his plea to two third-degree felonies and his agreement to a five-year sentence. As the *Barker* court explained, the speedy-trial right is unusual in that deprivation of the right sometimes works to the advantage of the accused. 407 U.S. at 521, 92 S.Ct. 2182, 33 L.Ed.2d 101 ("Delay is not an uncommon defense tactic. As the time between the commission of the crime and trial lengthens, witnesses may become unavailable or their memories may fade").

{¶ 69} Thus, Long's only viable argument is that notwithstanding the lack of particularized prejudice, the delay in this case was so excessive that prejudice should be presumed. This is different from the question whether the length of the

delay is "presumptively prejudicial" for the purposes of triggering the full-fledged *Barker* inquiry. *Maples v. Stegall*, 427 F.3d 1020, 1030 (6th Cir.2005). The prejudice analysis that occurs at the outset of the court's review merely requires that the delay be sufficiently long to state a speedy-trial claim—usually as it approaches one year. *Id.* Conversely, presuming prejudice under the fourth *Barker* factor depends on whether the delay was excessive. *Id.*; *see also Doggett*, 505 U.S. at 655, 112 S.Ct. 2686, 120 L.Ed.2d 520 ("excessive delay presumptively compromises the reliability of trial in ways that neither party can prove or, for that matter, identify").

{¶ 70} As explained above, some portions of the delay were justified by Long's assent to the trial court's scheduling of the case prior to the first trial and the last-minute nature of his first motion to dismiss. Long cannot be prejudiced by delays to which he contributed. *Barker* at 529 ("if delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine"). Rather, under the prejudice inquiry, we look at the portion of the delay that is attributable to the government. *See Maples* at 1031; *Barker* at 533-534.

{¶ 71} When the delay results from government negligence, whether or not prejudice will be presumed depends on the length of the delay. *United States v. Howard*, 218 F.3d 556, 564-565 (6th Cir.2000), citing *Doggett* at 657 ("our toleration of such negligence varies inversely with its protractedness"). "[T]o warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice." *Doggett* at 657.

{¶ 72} The delays fairly attributable to governmental inattention are the three-month period that passed between Long's remand and his first court date and the nine-month delay that followed the trial court's denial of his first motion to dismiss. It is unusual for a case to be delayed for nine months without explanation, and Long's incarceration during this time presents one of the concerns to which the

speedy-trial right is addressed. *See Barker* at 532. Nevertheless, a total delay of 12 to 13 months is not excessive enough that prejudice should be presumed. Indeed, courts have typically declined to presume prejudice under even longer delays. *See Barker*, 107 U.S. at 533-534, 92 S.Ct. 2182, 33 L.Ed.2d 101 (declining to presume prejudice for a delay of more than four years); *Maples* at 1031 (citing cases). Therefore, this factor weighs against finding a speedy-trial violation.

### E. Balancing the factors

{¶ 73} The extent to which the total length of the delay—17 months—extended beyond the threshold needed to trigger inquiry was not substantial and therefore weighs only minimally in Long's favor. And while the nine-month period in which the government neglected to take any action on Long's case weighs in Long's favor, it does so only marginally because Long caused and acquiesced in earlier delays in the case. On the other hand, Long did not assert his speedy-trial right in a timely fashion and raised the issue only after the fact, in separate motions to dismiss filed one week before each of his scheduled trials. Moreover, he suffered no actual prejudice from the delay and the delay was not so excessive as to presume prejudice. On balance, these factors counsel against finding that Long's constitutional right to a speedy trial was violated.

## IV. Conclusion

{¶ 74} Under proper application of the *Barker* factors, Long has not suffered a deprivation of his constitutional speedy-trial rights. I respectfully dissent from the majority's decision to vacate his convictions.

———————————

Daniel P. Driscoll, Clark County Prosecuting Attorney, and John M. Lintz, Assistant Prosecuting Attorney, for appellee.

Timothy Young, State Public Defender, and Patrick T. Clark, Assistant State Public Defender, for appellant.

———————————