[Cite as *State v. Butcher*, 2025-Ohio-1124.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO

    Appellee

v.

JEFFREY P. BUTCHER

    Appellant

C.A. No.    2024CA0053-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    2020CR0301

DECISION AND JOURNAL ENTRY

Dated: March 31, 2025

CARR, Judge.

**{¶1}** Defendant-Appellant Jeffrey Butcher appeals the judgment of the Medina County Court of Common Pleas. This Court affirms.

I.

**{¶2}** An indictment was filed April 29, 2020, charging Butcher with one count of theft in violation of R.C. 2913.02(A)(2), (B)(2), a felony of the fifth degree. The charge related to allegations that Butcher made unauthorized purchases from November 15, 2019, through December 31, 2019, using his employer's gas card while Butcher was on disability. The docket indicates that a request for the issuance of a warrant upon indictment was filed April 29, 2020, and the warrant to arrest was returned May 1, 2023. Butcher asserted that he did not learn of the warrant and indictment until later in April 2023 when he went to renew his driver's license. Butcher turned himself in on May 1, 2023. Butcher was arraigned on May 8, 2023. Butcher was represented by four different attorneys prior to trial. On January 11, 2024, Butcher's counsel filed

a motion to continue the trial. Hours later, Butcher's counsel filed a motion to dismiss on constitutional grounds for an unreasonable delay in prosecution. The argument centered on the length of time between when Butcher was charged and when the warrant for his arrest was returned. The State opposed the motion. A non-evidentiary hearing was held on the matter.[1] Ultimately, the trial court denied the motion.

{¶3} Butcher signed a jury trial waiver, and the matter proceeded to a bench trial. The trial court found Butcher guilty and thereafter sentenced him.

{¶4} Butcher initially appealed, but it was dismissed as untimely. Butcher then filed a motion for a delayed appeal, which was granted. Butcher has raised five assignments of error for our review, some of which will be addressed out of sequence and consolidated to facilitate our review.

II.

### ASSIGNMENT OF ERROR I

THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUPPORT CRIMINAL CONVICTIONS OF APPELLANT, RESULTING IN SUBSTANTIVE AND PROCEDURAL DUE PROCESS VIOLATIONS.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S [CRIM.R.] 29 MOTION.

{¶5} Butcher argues in his first assignment of error that his conviction is based on insufficient evidence. He asserts in his third assignment of error that the trial court erred in denying his Crim.R. 29 motion. As the arguments are related, we will address them together.

---

[1] This Court has previously noted that "[a] number of courts have held that a trial court need not conduct an evidentiary hearing on a speedy trial motion where the court is able to determine the issue from the record." *State v. McCain*, 2016-Ohio-4992, ¶ 31 (9th Dist.).

**{¶6}** Crim.R. 29(A) provides:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

**{¶7}** When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus.

**{¶8}** R.C. 2913.02(A)(2) states that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services . . . [b]eyond the scope of the express or implied consent of the owner or person authorized to give consent[.]" "If the value of the property or services stolen is one thousand dollars or more and is less than seven thousand five hundred dollars or if the property stolen is any of the property listed in section 2913.71 of the Revised Code, a violation of this section is theft, a felony of the fifth degree." R.C. 2913.02(B)(2). "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶9} At trial, there was testimony to support the narrative which follows. Butcher was an HVAC service tech for Steingass Mechanical, which is a construction company for plumbing, HVAC, and fire protection. He was supplied with a vehicle and a gas card from his employer. He was permitted to take the vehicle home with him in case there was a call in the middle of the night. The controller, Tracy Fife, was responsible for assigning the gas cards. She provided the gas cards to the dispatcher who handed them out to employees. The gas cards were to be used for fuel only. Each employee received a card with a unique number. In order to use the card, the employee would input a four-digit code, then the vehicle's odometer reading, and then the employee could fill up the vehicle. The code was the same for all employees. Ms. Fife explained that the gas card was only for company vehicle purchases and that each employee was notified of that prior to getting the gas card. She also testified that Butcher was informed of when he could and could not use the gas card, although there was no written policy.

{¶10} Beginning in mid-November 2019, Butcher went on temporary disability due to a knee surgery. Ms. Fife testified that Butcher would not have been authorized to use the gas card while he was on disability and off work. Nonetheless, there continued to be charges to Butcher's gas card. Ms. Fife was aware that Butcher was on disability because she sent Butcher the paperwork and she forwarded the completed paperwork on to the insurance company.

{¶11} On December 30, 2019, Ms. Fife contacted the Medina Police Department. While, at the time of trial, Ms. Fife was not clear about whether her report to the police involved misuse of the gas card, Officer Evan Scherer testified as to the police involvement. Officer Scherer indicated that Ms. Fife informed him that there were unauthorized purchases on Butcher's gas card and provided Officer Scherer with a printout of the disputed charges. Ms. Fife told Officer Scherer that Butcher had been on disability since September 19, 2019, so the printout included charges

from September. Ms. Fife advised police that she was not sure if anyone spoke to Butcher prior to his departure about not using the company vehicle or gas card. Later, it was learned that Butcher did not go on disability until mid-November.

{¶12} The printout showed the total charges from September through December as $3,568.54. However, the charges on the card for December 2019 totaled $2,197.47. Ms. Fife disputed the charges with the gas card company; one document indicates that she believed the amount to be around $2200 and in another document the total of the disputed charges was listed as $2,704.21. Steingass Mechanical did not receive any money from the gas card company, and ultimately, Butcher was terminated from the company. To Ms. Fife's knowledge, Butcher never made a report to Steingass Mechanical or the police that his card had been fraudulently used.

{¶13} Officer Scherer spoke to Butcher who denied knowing anything about the charges on the gas card. However, Butcher also indicated that no one else would be able to use the card as there is a four-digit code required to use it. Butcher informed the officer that he kept the card in the vehicle and that he was the only person that knew the code, which he kept in his wallet. Butcher still had the card at the time he spoke to the officer. Butcher stated that he would not have used the gas card because he did not want to lose his job. Police did not go to the gas stations at issue to see if there was any relevant surveillance footage.

{¶14} Viewing the evidence in a light most favorable to the State, we conclude that Butcher has not demonstrated that the trial court erred in denying his Crim.R. 29 motion or that the finding of guilt is based upon insufficient evidence. There was evidence presented that Butcher was informed of when he could and could not use the gas card. There was testimony that the gas card was only to be used for fuel purchases for the company vehicle and that Butcher was not authorized to use the card while he was on disability. Further, Butcher's conversation with Officer

Scherer evidences that Butcher was aware that he was not supposed to use the gas card as he told Officer Scherer that he would not have used the gas card because he did not want to lose his job. And while Butcher claimed to not know anything about the unauthorized charges, there was evidence presented that use of the card required a four-digit code and Butcher still had the card in his possession when he spoke to the officer.

{¶15} While Butcher argues the State failed to present evidence of any written policy as to the card's use, Butcher has not demonstrated such was necessary. There was evidence presented that Butcher utilized the card outside the scope of express or implied consent. *See* R.C. 2913.02(A)(2). Butcher also points to the multiple different loss amounts in the record; however, all of the amounts fell within the range of $1000 to $7500. *See* R.C. 2913.02(B)(2). Butcher additionally points to the lack of video surveillance or attempts by the police to confirm that Butcher was at the gas stations at issue as being problematic. However, Butcher has not explained how such evidence was necessary to support the conviction in light of the evidence that was in the record; the fact that additional evidence would have further supported a conviction does not warrant the automatic conclusion that the evidence presented was insufficient. Overall, Butcher has not demonstrated that the trial court erred in denying his Crim.R. 29 motion or that the verdict was not supported by sufficient evidence.

{¶16} Butcher's first and third assignments of error are overruled.

### ASSIGNMENT OF ERROR II

THE CONVICTION OF APPELLANT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AND SAID CONVICTION MUST BE VACATED.

{¶17} Butcher asserts in his second assignment of error that his conviction is against the manifest weight of the evidence.

{¶18} A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Id.*

{¶19} Butcher essentially repeats many of the same arguments he raised in his challenge to the sufficiency of the evidence. This Court has independently reviewed the entire record and can only conclude that Butcher has not demonstrated that the trier or fact lost its way in finding him guilty. The evidence presented and discussed above when considered in light of Butcher's arguments does not support that the conviction was against the manifest weight of the evidence.

{¶20} Butcher's second assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

THE PROSECUTOR ENGAGED IN AFFIRMATIVE MISCOND[UCT] RESULTING IN A DENIAL OF DUE PROCESS AND A FAIR TRIAL.

{¶21} Butcher argues in his fourth assignment of error that the prosecutor engaged in misconduct in questioning Ms. Fife as the questioning was "designed to impugn the credibility of [Butcher] who exercised his right against self-incrimination by not testifying."

{¶22} "[I]n deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a court determines if the prosecutor's actions were improper, and, if so, whether the defendant's substantial rights were actually prejudiced." *State v. Robertson*, 2024-Ohio-2848, ¶

38 (9th Dist.), quoting *State v. Haywood*, 2017-Ohio-8299, ¶ 62 (9th Dist.). "[A] judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial." *Haywood* at ¶ 62, quoting *State v. Knight*, 2004-Ohio-1227, ¶ 6 (9th Dist.). "The defendant must show that, but for the prosecutor's misconduct, the trier of fact would not have convicted him." *Haywood* at ¶ 62.

{¶23} At trial the prosecutor attempted to ask Ms. Fife about whether Mr. Butcher or anyone else made a report with Steingass Mechanical or law enforcement concerning fraudulent activity on the gas card. Defense counsel objected on the basis of the Fifth Amendment. The trial court overruled the objection and Ms. Fife testified that to her knowledge Butcher had not made a report to Steingass Mechanical or law enforcement.

{¶24} Even if we were to assume that the questioning was problematic, Butcher has not demonstrated that the result of the trial would have been otherwise absent the allegedly improper questioning. Notably, the matter was tried to the trial court, not a jury. "[J]udges are presumed in a bench trial to rely only upon relevant, material, and competent evidence." *State v. Fox*, 69 Ohio St.3d 183, 189 (1994). Butcher has not argued or demonstrated that the trial court relied upon the allegedly improper evidence in rendering the verdict.

{¶25} Butcher's fourth assignment of error is overruled.

### ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS CHARGES BASED UPON UNREASONABLE DELAY AND A VIOLATION OF THE CONSTITUTIONAL RIGHT TO SPEEDY TRIAL.

{¶26} Butcher argues in his fifth assignment of error that the trial court erred in denying his motion to dismiss based upon an alleged violation of his constitutional right to a speedy trial.

Specifically, he challenges the post-indictment delay as being unjustifiable. This delay amounted to approximately three years.

**{¶27}** "Review of a speedy-trial claim involves a mixed question of law and fact. Therefore, we defer to the trial court's factual findings if they are supported by competent, credible evidence, but we review the application of the law to those facts de novo." *State v. Long*, 2020-Ohio-5363, ¶ 15. "A criminal defendant's right to a speedy trial 'is not limited in scope to the period following formal arrest but extends to any delay between indictment and arrest.'" *State v. McCain*, 2016-Ohio-4992, ¶ 9 (9th Dist.), quoting *State v. Ismail*, 2001 WL 7385, *1 (9th Dist. Jan. 3, 2001). "The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *State v. Triplett*, 78 Ohio St.3d 566, 568 (1997), quoting *United States v. MacDonald*, 456 U.S. 1, 8 (1982).

> To determine whether there has been a denial of a defendant's constitutional right to a speedy trial, the court considers four factors identified in *Barker* [*v. Wingo*, 407 U.S. 514 (1972)]: (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the prejudice to the defendant. No single factor controls the analysis, but the length of the delay is important. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Generally, a delay that approaches one year is presumptively prejudicial.

(Internal quotations and citations omitted.) *Long* at ¶ 14.

**{¶28}** Accordingly, this Court has considered the issue under a two-pronged analysis. *Ismail* at *1. First, we consider whether the delay was presumptively prejudicial. *Id.* If the defendant satisfies that prong, then the Court considers the factors in *Barker*. *Id.* at *2. This test is a balancing test in which all circumstances are considered. *McCain* at ¶ 12.

**{¶29}** Given the delay was approximately three years, the delay is presumptively prejudicial, and we proceed to analyze the *Barker* factors. *See Long* at ¶ 14; *Ismail* at *2.

**{¶30}** The first factor relates to the length of the delay. *See Long,* 2020-Ohio-5363, at ¶ 14. This Court has in the past, under circumstances wherein a period of 18 months elapsed during which the defendant was unaware of the charges, concluded the first factor weighed in the defendant's favor, but the weight was "negligible." *McCain*, 2016-Ohio-4992, at ¶ 14 (9th Dist.). In so doing, we noted that, "[t]he interests which the Sixth Amendment was designed to protect— freedom from extended pretrial incarceration and from the disruption caused by unresolved charges—are not issues in this case." (Internal quotations and citations omitted.) *Id*. Here, Butcher asserted that he had no knowledge of the warrant or indictment until he went to renew his driver's license in late April 2023. As Butcher was unaware of the indictment until April 2023, and was only incarcerated for eight days, the length of delay weighs only negligibly in Butcher's favor.

**{¶31}** The second factor addresses the reason the government uses to justify the delay. *See Long* at ¶ 14; *Barker*, 407 U.S. at 531.

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker* at 531. Here, the State pointed to problems caused by COVID-19 jail restrictions, wherein the jails were overbooked and only individuals accused of serious, violent offenses were arrested and held. Thus, much of the delay appears to be due to the societal-wide problems caused by the COVID-19 pandemic. These restrictions were implemented by the government, albeit for the

benefit of the public good.  Given the unprecedented nature of the pandemic, we cannot say that this factor weighs heavily one way or the other.

{¶32}    The third factor addresses the assertion of the right to a speedy trial.  *See Long* at ¶ 14.  Butcher was certainly made aware of the charges in May 2023 when he was arrested and arraigned.  However, Butcher did not file a motion to dismiss until months later on January 11, 2024, a period of 256 days.  Prior to that time, Butcher had requested and been granted multiple continuances of the trial, and had multiple different attorneys represent him over the course of the litigation.  Butcher did not file his motion to dismiss until after his trial had been continued at least four times at his request.  Thus, Butcher did not promptly assert his right to a speedy trial.  This delay weighs against Butcher's claim.  *See McCain* at ¶ 17.

{¶33}  The last factor addresses the prejudice to the defendant.  *Barker* at 532.

> Prejudice [] should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect[:]   (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.  Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

(Footnote omitted.)  *Id.* Butcher does not appear to dispute that the first two subfactors do not apply to his situation as Butcher was only briefly incarcerated during the proceedings and did not express any anxiety due to the outstanding charges.  Instead, Butcher focused on the alleged impairment of his defense.  Butcher maintained that the passage of time hindered his ability to present an alibi defense as witnesses, including himself, would be unable to remember what they were doing three years prior.

{¶34}  In finding this factor did not favor Butcher, the trial court noted that Butcher himself asserted that the case was simple, and that additional investigation was unnecessary.  The trial court maintained that, given the simple nature of the case, it should not have been problematic for

Butcher to recall the events or formulate a defense. Further, Butcher's claims involve some level of speculation. "A defendant's general assertions fall far short of the actual loss of evidence requirement[.]" *Ismail*, 2001 WL 7385, at \*3.

**{¶35}** Overall, Butcher has not demonstrated that the trial court erred in concluding that Butcher failed to establish that his constitutional right to a speedy trial was violated.

**{¶36}** Butcher's fifth assignment of error is overruled.

## III.

**{¶37}** Butcher's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

SUTTON, P. J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

GREGORY SCOTT ROBEY, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and STEFANIE H. ZARANEC, Assistant Prosecuting Attorney, for Appellee.